## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| JEFFREY BLUBAUGH, individually and on behalf of a class of all persons and entities similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>EVERYTHING HEALTH INVESTMENTS, LLC,<br><br>        Defendant. | Case No: 4:25-cv-00527 |

### DEFENDANT'S COMBINED MOTION FOR SUMMARY JUDGMENT AND SUGGESTIONS IN SUPPORT OR, IN THE ALTERNATIVE, MOTION TO STRIKE CLASS ALLEGATIONS

Everything Health Investments, LLC ("Defendant") by and through undersigned counsel, respectfully moves this Court for summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56, or, in the alternative, to strike Plaintiff Jeffrey Blubaugh's class allegations pursuant to Federal Rule of Civil Procedure 12(f). In support of this Motion, Defendant states as follows:

### INTRODUCTION

Plaintiff Jeffrey Blubaugh alleges that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., by placing telemarketing calls to him without his consent. But the undisputed evidence demonstrates that Mr. Blubaugh provided his prior express written consent to receive precisely the type of marketing calls at issue in this litigation on no less than four separate occasions. Defendant has produced documentary evidence of four separate consent forms signed by Plaintiff, each authorizing marketing communications to his telephone number.

1

Plaintiff Jeffrey Blubaugh has filed multiple TCPA claims and his attorneys have filed hundreds of similar lawsuits. These are sophisticated professional plaintiffs and they are certainly aware that prior express consent is a complete defense to TCPA liability. However, they have not provided any response regarding the existence of the consents, despite multiple requests. Nonetheless, in light of the facts presented, Plaintiff's claims fail and summary judgment should be granted in Defendant's favor.

Moreover, even if the Court were to find a genuine dispute as to Plaintiff's consent, Plaintiff would be an inadequate and atypical class representative such that he presents unique, not common claims and defenses. The individualized inquiry required to investigate his unique consent circumstances demonstrates that common questions do not predominate over individual issues, rendering class certification impossible. The class allegations should be stricken.

## UNDISPUTED STATEMENT OF MATERIAL FACTS

1. On July 10, 2025, Plaintiff filed this putative class action alleging that Everything Health sent telemarketing calls promoting goods and services, including calls using pre-recorded messages and calls to numbers on the National Do Not Call Registry.

2. Everything Health Investments, LLC is a healthcare marketing company that provides marketing products. See Declaration of Eric Bernstein, attached hereto as Exhibit A.

3. Everything Health engages with third-party vendors to obtain leads for individuals who have expressed interest in Everything Health's products. Ex. A.

4. The leads used are verified by neutral-third parties which provide lead verification services. Ex. A.

2

5.      Plaintiff alleges he received six calls from Everything Health from July 15, 2024 to March 21, 2025.

6.      Plaintiff claims he never consented to receive calls from Everything Health.

7.      However, Plaintiff Jeffrey Blubaugh consented to be contacted by Defendant on at least four occasions. Ex. A.

8.      The first consent was given on October 10, 2023.  Ex. A.

9.      This consent was verified by Verisk Marketing Solutions.  Ex. A.

10.     Mr. Blubaugh provided his name, "Jeff Blubaugh," his telephone number ending in 2682, and his email, "jrblubaugh@gmail.com."

11.     The consent included TCPA disclosure statements, including:

I AGREE TO & UNDERSTAND THE DATA POLICIES THAT GOVERN THIS SITE, HOW MY DATA IS USED, DISCLOSED AND  SHARED & WHAT I GET AS A USER

BY SUBMITTING THIS FORM I AGREE TO THE PRIVACY POLICIES, TERMS & CONDITIONS AND DATA COLLECTION PRACTICES OF ONLYGREATJOBS.COM & THEIR MARKETING PARTNERS AND AGREE TO RECEIVE EMAIL FROM THEM. SKIP HERE

BY CLICKING I AGREE & CONTINUE, I CERTIFY I ENTERED MY OWN INFORMATION & I AGREE TO THE PRIVACY POLICY AND TERMS (WITH ARBITRATION AGREEMENT). I ALSO CONSENT TO YOUR AGENTS, MARKETING PARTNERS, MEDIGAP LIFE CONTACTING ME WITH MARKETING CALLS OR TEXTS AT THE PHONE NUMBER I PROVIDED REGARDLESS OF MY STATUS ON STATE OR FEDERAL DO NOT CALL LISTS, INCLUDING USING AN AUTODIALER (MSG & DATA RATES APPLY). I UNDERSTAND THESE CALLS OR TEXTS MAY INCLUDE ADS FOR SERVICES SUCH AS MEDICARE ADVANTAGE PRODUCTS. CONSENT ISN'T REQUIRED. SKIP HERE

BY CLICKING "CONTINUE", I REPRESENT THAT I AM 18+ YEARS OF AGE; I UNDERSTAND THAT THIS SITE IS PRIVATELY OWNED, NOT AFFILIATED WITH, NOR ENDORSED BY ANY GOVERNMENT AGENCY, I AGREE THAT THE PERSONAL INFORMATION PROVIDED MAY BE SHARED WITH THIRD PARTIES FOR OTHER MARKETING PURPOSES, AND AGREE TO THE PRIVACY POLICY AND TERMS OF USE; AND AGREE

3

99224\328640959.v1

TO RECEIVE EMAIL MARKETING FROM ONLYGREATJOBS.COM AND ITS MARKETING PARTNERS

12. A screen recording of the video playback is attached hereto as Exhibit B.

13. A second consent was given on March 24, 2024.

14. This consent was verified by Verisk Marketing Solutions.  Ex. A.

15. Mr. Blubaugh provided his name, his telephone number ending in 2682, his email, and his date of birth.

16. The consent included TCPA disclosure statements, including:

BY CLICKING "CONTINUE", I REPRESENT THAT I AM 18+ YEARS OF AGE; I UNDERSTAND THAT THIS SITE IS PRIVATELY OWNED, NOT AFFILIATED WITH, NOR ENDORSED BY ANY GOVERNMENT AGENCY, I AGREE THAT THE PERSONAL INFORMATION PROVIDED MAY BE SHARED WITH THIRD PARTIES FOR OTHER MARKETING PURPOSES, AND AGREE TO THE PRIVACY POLICY AND TERMS AND CONDITIONS AND AGREE TO RECEIVE EMAIL MARKETING FROM HIGHERINCOMEJOBS.COM AND ITS MARKETING PARTNERS. SKIP HERE

BY CLICKING I AGREE & CONTINUE, I CERTIFY I ENTERED MY OWN INFORMATION & I AGREE TO THE PRIVACY POLICY AND TERMS (WITH ARBITRATION AGREEMENT). I ALSO CONSENT TO YOUR AGENTS, MARKETING PARTNERS, MEDIGAP LIFE CONTACTING ME WITH MARKETING CALLS OR TEXTS AT THE PHONE NUMBER I PROVIDED REGARDLESS OF MY STATUS ON STATE OR FEDERAL DO NOT CALL LISTS, INCLUDING USING AN AUTODIALER (MSG & DATA RATES APPLY). I UNDERSTAND THESE CALLS OR TEXTS MAY INCLUDE ADS FOR SERVICES SUCH AS MEDICARE ADVANTAGE PRODUCTS. CONSENT ISN'T REQUIRED.

BY CLICKING 'YES', I PROVIDE MY EXPRESS WRITTEN CONSENT VIA CHAT/WEBFORM INTERACTION FOR A LICENSED SALES AGENT ASSOCIATED WITH ALLIED INSURANCE, VINCENT CORTAZAR/MEDIGAP LIFE, 100INSURE, GO HEALTH, LLC, HEALTHPLANONE, LLC, CLEARMATCH MEDICARE, MEDICARE SOLUTIONS TO CONTACT ME AT THE NUMBER I PROVIDED, EVEN IF THE PHONE NUMBER IS ON THE NATIONAL DO NOT CALL REGISTRY, REGARDING PRODUCTS OR SERVICES, INCLUDING MEDICARE SUPPLEMENT, MEDICARE ADVANTAGE, PRESCRIPTION DRUG

4

99224\328640959.v1

INSURANCE PLANS, AND OTHER HEALTH-RELATED SERVICES VIA LIVE, AUTOMATED DIALING SYSTEM TELEPHONE CALL, TEXT, OR EMAIL. I UNDERSTAND THIS REQUEST IS INITIATED BY ME AND THIS IS AN UNSCHEDULED CONTACT REQUEST. I UNDERSTAND MY TELEPHONE COMPANY MAY IMPOSE CHARGES FOR THESE CONTACTS AND AM NOT REQUIRED TO ENTER INTO THIS AGREEMENT AS A CONDITION OF ANY PURCHASE OR SERVICE. I FURTHER UNDERSTAND THIS REQUEST, INITIATED BY ME, IS MY AFFIRMATIVE CONSENT TO BE CONTACTED WHICH IS IN COMPLIANCE WITH ALL FEDERAL AND STATE TELEMARKETING AND DO-NOT-CALL LAWS. LICENSED SALES AGENTS AREN'T CONNECTED WITH OR ENDORSED BY THE U.S. GOVERNMENT OR THE FEDERAL MEDICARE PROGRAM. I AGREE TO THE PRIVACY POLICY AND TERMS. THIS IS A SOLICITATION FOR INSURANCE. PARTICIPATING SALES AGENCIES REPRESENT MEDICARE ADVANTAGE [HMO, PPO AND PFFS] ORGANIZATIONS AND STAND-ALONE PDP PRESCRIPTION DRUG PLANS THAT ARE CONTRACTED WITH MEDICARE. ENROLLMENT DEPENDS ON THE PLAN'S CONTRACT RENEWAL. ENROLLMENT IN THE DESCRIBED PLAN TYPE MAY BE LIMITED TO CERTAIN TIMES OF THE YEAR UNLESS YOU QUALIFY FOR A SPECIAL ENROLLMENT PERIOD. NO OBLIGATION TO ENROLL. SCOPE OF APPOINTMENT - BY CLICKING "YES" YOU ALSO AGREE TO ALLOW ALLIED INSURANCE, VINCENT CORTAZAR/MEDIGAP LIFE, 100INSURE, GO HEALTH, LLC TO DISCUSS MEDICARE SUPPLEMENT, MEDICARE ADVANTAGE, AND STAND-ALONE PRESCRIPTION DRUG PLANS AVAILABLE IN YOUR AREA, 48 HOURS FROM OBTAINING THE SCOPE OF APPOINTMENT. YOU ARE NOT OBLIGATED TO ENROLL IN A PLAN AND AGREEING TO THIS DOES NOT AFFECT YOUR CURRENT ENROLLMENT NOR WILL IT ENROLL YOU IN A MEDICARE PLAN. YOU ALSO AGREE AND UNDERSTAND THAT YOU MAY BE ASSISTED BY AN AFFILIATED AGENT AND/OR AGENCY OF ALLIED INSURANCE, VINCENT CORTAZAR/MEDIGAP LIFE, 100INSURE, GOHEALTH, LLC. EFFECTIVE DATE: 3/24/2024 SMID MULTI-PLAN_JM0XZQDI2024_C

Ex. A.

17.     A screen recording of the video playback is attached hereto as Exhibit C.

18.     Mr. Blubaugh alleges he received marketing communications from Defendant on July 15, 2024 and August 14, 2024.  This was after he had consented twice to receive marketing communications.

19.     A third consent was given on September 10, 2024.

20.     Mr. Blubaugh provided his name, "jeff blubaugh," his address, and date of birth.

5

99224\328640959.v1

21. The consent included TCPA disclosure statements, including:

By clicking "Yes," I provide my express written consent via this web form to initiate a chat interaction for a licensed sales agent associated with Innovative Financial Group to contact me at [telephone number], even if the phone number provided is on the National Do Not Call registry, regarding products or services, including Medicare Supplement, Medicare Advantage, Prescription Drug Insurance plans, and other health-related services. I consent to being contacted via a live automated dialing system, telephone call, or email. I understand this request has been initiated by me and that this is an unscheduled contact request where I am requesting information immediately. I understand my telephone company may impose charges on me for these contacts and am not required to enter into this agreement as a condition of any purchase or service. I further understand that this request, initiated by me, is my affirmative consent to be contacted, which is in compliance with all federal and state telemarketing and Do-Not-Call laws. I acknowledge that I am not providing specific health information through this form. Licensed Sales Agents are not connected with or endorsed by the U.S. government or the federal Medicare program. I agree to the Privacy Policy and Terms and Conditions. Please note this is a solicitation for insurance. There is no obligation to enroll. Participating sales agencies represent Medicare Advantage, HMO, PPO, and PFFS organizations and stand-alone PDP prescription drug plans that are contracted with Medicare. Enrollment depends on the plan's contract renewal. Enrollment in the described plan type may be limited to certain times of the year unless you qualify for a Special Enrollment Period.

Ex. A.

22. Plaintiff alleges he received marketing communications on January 20, 2025 and February 4, 2025. At this point he had consented to calls on three occasions.

23. A fourth consent was given on February 11, 2025.

24. This consent was verified by ActiveProspect Trusted Form. Ex. A.

25. Mr. Blubaugh provided his name, "Jeff Blubaugh," his telephone number ending in 2682, and his email, "jrblubaugh@gmail.com."

26. The consent included TCPA disclosure statements, including:

By clicking "Click To See Your Results" I give my electronic signature agreeing to the Terms, including my agreement to Arbitration of any disputes, and the Privacy Policy, and I expressly consent to be contacted via telephone using an automated telephone dialing system, pre-recorded messages, artificial voice and to receive text messages by Single Parents Alliance of America (SPAOA), Holiday Relief (HR),

99224\328640959.v1

American Hope Resources (AHR), Americas Health, Benefitlink and our Marketing Partners regarding various offers, on the number I provided. Reply HELP at any time, or STOP to opt-out. Msg & Data rates may apply. Consent is not required to use SPAOA's service and you can access content here

I confirm all my information is accurate and consent to be texted as provided below.

Ex. A.

27. A screen recording of the video playback is attached hereto as Exhibit D.

28. Plaintiff alleges that the last time he was called was on March 12, 2025.  This was following four events in which he consented to calls.

## LEGAL STANDARD

### i. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The burden of proof is on the moving party to set forth the basis of the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

### ii. Standard for Striking Class Allegations

Under Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he [C]ourt may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "Judges enjoy liberal discretion to strike pleadings under Rule 12(f)." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1091 (8th Cir. 2021) (quoting *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007)).  A district court may grant a motion

7

to strike class-action allegations prior to the filing of a motion for class-action certification. *Id*. at 1092. Where it is clear from the face of the pleadings that class certification would be impossible, courts may appropriately strike class allegations at the pleading stage because allowing meritless class claims to remain in the complaint introduces irrelevant matter and unfairly burdens defendants with having to defend against claims that cannot ultimately succeed. *Id*. at 1091–92.

**ARGUMENT**

### *i. Plaintiff's Prior Written Consent Defeat His Claims*

In relevant part, the TCPA makes it unlawful for a person: "(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ...." 47 U.S.C. § 227(b)(1)(A). Section 227(b)(1)(A) carves out an exception to its prohibition on robocalls to cellular phones for those calls made with the recipient's "prior express consent." Thus, there is no violation of the TCPA if the called party provided his or her express consent to receive auto-dialed or prerecorded message calls on his or her cellular phone.

The FCC has clarified that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re* Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 F.C.C.R. 8752, 8769 (Oct. 16, 1992). Thus, a telemarketer does not violate the TCPA "by calling a number which was provided as one at which the called party wishes to be reached." *Id*.

For telemarketing calls to cell phones, the FCC has promulgated regulations defining the consent required. The express written consent must include "a clear and conspicuous disclosure

8

informing the person signing that, by executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system . . . and the person is not required to sign the agreement (directly or indirectly) or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." 47 C.F.R. § 64.1200(f)(8)(i); *see also Oliver v. TTC-Ameridial, LLC*, 2018 U.S. Dist. LEXIS 39748, at *4–5 (N.D. Ill. Mar. 12, 2018).

Despite his claim to the contrary, Plaintiff did in fact consent to receive calls from Defendant. Defendant produced in discovery four separate written consent forms bearing Plaintiff's information, each demonstrating his prior express written consent to receive marketing calls, including calls to numbers on the Do Not Call Registry and calls using automated dialing systems or prerecorded messages. The consents were given over the course of sixteen months, with the first being given on October 10, 2023 and the most recent consent being given on February 11, 2025.

The undisputed evidence before this Court demonstrates that Plaintiff Jeffrey Blubaugh provided his prior express written consent to receive the marketing calls at issue. Defendant produced four consent forms showing that Plaintiff (1) provided his phone number voluntarily (the verified lead event data confirms that Plaintiff entered his own phone number ending in 2682 into web forms on multiple occasions); (2) was presented with clear and conspicuous TCPA disclosures; (3) expressly consented to calls regardless of Do Not Call status; and (4) affirmatively clicked to consent.

Courts have consistently granted summary judgment for defendants in TCPA cases where the plaintiff provided consent through web forms containing compliant TCPA disclosures. In *Oliver*, the court granted summary judgment where the plaintiff entered her contact information

99224\328640959.v1

into a website that contained the disclosure: "By checking this box, I expressly agree to receive marketing phone calls, text or SMS messages, or emails, from online-edu-help.com or Marketing Partners at any phone number I provide, even if the number is a wireless number . . . I understand that such calls may be placed using automatic dialing equipment or pre-recorded messages, and that I am not required to check this box to purchase any goods or services." 2018 U.S. Dist. LEXIS 39748, at *3–4. The court found this consent sufficient and entered judgment for the defendant. *Id*. at *9.

Similarly, in *Elkins v. Medco Health Solutions, Inc.*, the court granted summary judgment for the defendant, finding that the plaintiff's TCPA claim was "barred because she gave her express prior consent to be called at the number she provided when she gave that number at the time of enrollment as her number for contact." 2014 U.S. Dist. LEXIS 57633 (E.D. Mo. Apr. 25, 2014) at *5. The court rejected the plaintiff's contention that she could not provide consent because she never actually reviewed the documents and agreements at the time of enrollment. *Id*. at *6.

In *Baird v. Sabre, Inc.*, 995 F. Supp. 2d 1100, the plaintiff provided her contact information and consent to communications through an online web portal during the process of purchasing airline tickets through Hawaiian Airlines. Defendant Sabre, Inc. was a third-party which contracted with Hawaiian Airlines to provide flight notifications. The court held that Sabre, Inc's communications with the plaintiff were consented to when she provided her telephone number through the web portal.

The same result is warranted here. Like the plaintiffs in *Oliver* and *Elkins*, Mr. Blubaugh voluntarily provided his telephone number through web forms containing clear and conspicuous TCPA disclosures. He affirmatively clicked to consent to receive marketing calls via automated dialing systems and prerecorded messages, including calls to numbers on the Do Not Call Registry.

10

The documentary evidence of his consent is clear and unrebutted. Summary judgment is therefore appropriate on Plaintiff's individual claims.

### ii. Alternatively, The Class Allegations Should be Stricken Because Plaintiff is an Inadequate Class Representative and Individualized Consent Issues Preclude Class Certification

Despite requests from Defendant, Plaintiff has not yet explained why these consents do not apply to these claims, do Defendant does not yet know what is Plaintiff's position. That said, even if this Court determines that a genuine dispute exists as to Plaintiff's consent (because, for example, he presents evidence that someone else provided his number), the class allegations must be stricken because Plaintiff cannot adequately represent a class of individuals similarly situated to him. Further, the resulting individualized nature of the consent inquiry defeats commonality, typicality, adequacy, and predominance under Rule 23.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Plaintiff cannot satisfy either requirement. The very existence of multiple documented consents bearing his information makes him unlike the putative class members who allegedly received calls without consent. The unique circumstances surrounding his alleged consent, including multiple web forms, verified lead events with his personal data, and session replays showing his active participation, require an intensely individualized inquiry that is atypical of claims that might be brought by other class members.

Additionally, Courts have held that where consent is at issue in TCPA cases, class certification is inappropriate because consent must be independently assessed for each putative class member. In *Ung v. Universal Acceptance Corp.*, the court denied class certification, finding that "individualized inquiries on the issue of consent to calls could not be resolved across the class with common evidence." 319 F.R.D. 537, 540–41 (D. Minn. 2017). The court found that liability

11

for each class member would depend upon whether the class member provided consent and therefore concluded that "the circumstances surrounding consent are not 'susceptible to generalized, class-wide proof.'" *Id*. at 541. Class certification would be inappropriate under such circumstances, as common questions would not predominate over individual ones. *Id*.

Similarly, in *Newhart v. Quicken Loans, Inc.*, the court denied class certification where "consent simply could not be resolved across the class with common evidence" because individuals had provided consent through various means. 2016 U.S. Dist. LEXIS 168721 (S.D. Fla. Oct. 13, 2016). The court noted that *Newhart* "joined a 'chorus' of other courts 'faced with TCPA class actions that have found such individualized inquiries on the consent issue' precluded class certification." *Id*.

Common questions do not predominate individual questions in this case. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." The consent issue defeats predominance because each putative class member's consent (or lack thereof) must be individually examined.

For these reasons, the class allegations should be stricken here. Everything Health conducts telemarketing through lead generation services that obtain consumer consent through web forms. Determining whether any given putative class member provided consent would require examining: (1) whether the individual submitted a web form; (2) whether the web form contained a compliant TCPA disclosure; (3) whether the individual affirmatively clicked to consent; (4) the scope of the consent provided; and (5) whether the consent was later revoked. These individualized inquiries overwhelm any common questions.

**CONCLUSION**

12

99224\328640959.v1

In sum, this case fails at every level. On the merits, Plaintiff's individual claims are defeated by uncontested documentary evidence establishing that he provided his prior express written consent to receive the very calls he now complains about. He provided consent multiple times through verified web forms containing clear and conspicuous TCPA disclosures. Defendant produced four separate consent records, each bearing Plaintiff's personal information and telephone number, each containing compliant disclosure language, and each showing Plaintiff's affirmative act of clicking to consent.

In the alternative, his class allegations must still be stricken. Plaintiff is an atypical and inadequate representative for a class of individuals who allegedly never consented at all. Class certification is impossible under these circumstances.

WHEREFORE, Defendant Everything Health Investments, LLC respectfully requests that this Court grant summary judgment Defendant's favor on all of Plaintiff's individual claims; or in the alternative, strike Plaintiff's class allegations, and for any such further relief this Court deems just and proper.

Respectfully submitted,

**HINSHAW & CULBERTSON, LLP**

By: */s/ James M. Brodzik*
James M. Brodzik, #66700
Joshua C. Hinkle, #72845
701 Market Street, Suite 260
St. Louis, MO 63101
P: 314-241-2600
F: 314-241-7428
jbrodzik@hinshawlaw.com
jhinkle@hinshawlaw.com

Attorneys for Defendant
EVERYTHING HEALTH INVESTMENTS,

13

99224\328640959.v1

LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically filed and served electronically via the Court's ECF system on all parties receiving ECF notices, on this 18th day of March, 2026.

_/s /James M. Brodzik_

99224\328640959.v1